Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL I

| | | |
|---|---|---|
| ELVIN FRANCISCO CASTRO MÁRQUEZ<br><br>Recurrente<br><br>v.<br><br>JUNTA DE RETIRO DEL GOBIERNO DE PUERTO RICO<br><br>Recurridos | KLRX202500013 | *Mandamus* procedente de la Junta de Retiro del Gobierno de Puerto Rico<br><br>Caso Núm. 2024-0017<br><br>Sobre: Interés - Pensión mérito |

Panel integrado por su presidente, el Juez Sánchez Ramos, el Juez Pagán Ocasio y el Juez Rodríguez Flores.

Pagán Ocasio, juez ponente.

## SENTENCIA

En San Juan, Puerto Rico, a 16 de mayo de 2025.

### I.

El 6 de mayo de 2025, el señor Elvin Francisco Castro Márquez (el señor Castro Márquez o recurrente) presentó el recurso de *Mandamus*, bajo juramento y por derecho propio, en el que solicitó que ordenemos a la Junta de Retiro del Gobierno de Puerto Rico (la Junta de Retiro o parte recurrida) a que ejecute el mandato de la *Sentencia* emitida el 31 de marzo de 2022 por este Tribunal de Apelaciones en el caso ***Elvin F. Castro Márquez v. Administración de los Sistemas de Retiro de los empleados del Gobierno y la Judicatura***, KLAN202100551.[1]

En la referida *Sentencia*, un panel hermano resolvió que el recurrente laboró los treinta (30) años requeridos para recibir la pensión por años de servicio que solicitó. Empero, esa Curia devolvió el caso a la agencia administrativa para que computara el período trabajado y no acreditado ante la Junta de Retiro. A su vez, decretó

---

[1] Apéndice del *Mandamus*, Anejo A, págs. 1-15.

que una vez el señor Castro Márquez completara el pago de las horas trabajadas y no cotizadas, calculado por la agencia, procedía concederle la pensión por años de servicio.

Como cuestión de umbral, debemos mencionar que la Regla 7 (B) (5) del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 7 (B) (5), confiere a este foro la facultad para prescindir de escritos, en cualquier caso, ante su consideración, con el propósito de lograr su más justo y eficiente despacho. Dadas las particularidades de este caso, prescindimos de la comparecencia de la parte recurrida.

**II.**

Surge del expediente ante nos que el caso de marras tuvo su génesis el 21 de diciembre de 2010, cuando el recurrente presentó ante la Junta de Gobierno una *Solicitud de Cotización para Servicios No Cotizados*, con tal de recibir su pensión por treinta (30) años de servicio. No obstante, la Junta de Gobierno insistió en que el señor Castro Márquez no tenía los años por servicio compulsorios para obtener la pensión.

Tras diversos trámites administrativos, el 31 de marzo de 2022, un panel hermano de este Tribunal de Apelaciones emitió una *Sentencia*[2] en la que resolvió que al señor Castro Márquez le asistía el derecho a una pensión tras completar los treinta (30) años de servicio requeridos. No obstante, el recurrente debía cumplir con el pago del tiempo trabajado y no cotizado ante la Junta de Retiro para obtener el beneficio de retiro por años de servicio.

Luego, el 10 de mayo de 2023, la Junta de Gobierno le envió una misiva al recurrente en la que le informó las horas y los años trabajados que no fueron cotizados, en cumplimiento con el

---

[2] ***Elvin F. Castro Márquez v. Administración de los Sistemas de Retiro de los empleados del Gobierno y la Judicatura***, KLAN202100551, págs. 1-13.

mandato de este tribunal.[3] Asimismo, le expresó que no acreditó siete punto veinticinco (7.25) años los cuales eran equivalentes a una cuantía de ciento cuarenta y cuatro mil doscientos ochenta cuatro dólares y treinta nueve centavos ($144, 284. 39). Además, la Junta de Retiro le notificó que una vez recibiera el pago de la mencionada suma, entonces el recurrente recibiría la pensión de retiro por años de servicio.

El 21 de marzo de 2024, el señor Castro Márquez cursó una carta dirigida a la parte recurrida en la que arguyó que ha realizado múltiples intentos para comunicarse con la Junta de Retiro con tal de tener conocimiento acerca del pago que debe realizar, con respecto a las horas no acreditadas, pero que la comunicación ha sido infructuosa.[4] A su vez, alegó que la Junta de Retiro ha incumplido con su deber ministerial en velar por su dignidad y las obligaciones impuestas estatutariamente para que este obtuviera su pensión de retiro por años de servicio.

El 1 de abril de 2024, la Directora de la División de Servicios y Beneficios de la Junta de retiro le remitió una carta al recurrente, en atención a la misiva enviada por este el 21 de marzo de 2024, en la que resaltó que en diversas ocasiones se reunió con el señor Castro Márquez en la que le explicó la procedencia de las horas no acreditadas y el pago que debería llevar a cabo para gozar de la pensión por años de servicio, según ordenó este tribunal.[5] Cónsono con lo anterior, la Junta de Retiro le recordó al recurrente que durante una reunión le informó que la parte recurrida estaba inhabilitada de otorgar préstamos, para que el recurrente pudiera pagar el monto equivalente a las horas no cotizadas, ante la insolvencia del sistema de retiro. Además, la Junta de Retiro le cursó

---

[3] Apéndice del Mandamus, Anejo C, págs. 29-55.
[4] Íd., Anejo I, págs. 100-118.
[5] Íd., Anejo G, págs. 86-95

a la representante legal del recurrente la documentación correspondiente al cómputo de la cuantia de los servicios no cotizados por el señor Castro Márquez. A su vez, le indicó al recurrente que no ha realizado el pago informado para obtener la pensión por años de servicios.

El 9 de abril de 2024, el recurrente le cursó una carta al Director Ejecutivo de la Junta de Retiro en la que alegó que la parte recurrida ha dilatado los procedimientos para este cumplir con el pago del monto correspondiente a los servicios no cotizados.[6] Además, el señor Castro Márquez alegó que la parte recurrida le coartó su derecho a recibir una pensión en virtud de que la Junta de Retiro le informó que debe pagar la cuantía coetánea al tiempo no cotizado para poder recibir el beneficio de retiro por años de servicio. Por ende, el señor Castro Márquez solicitó que el Director Ejecutivo interviniera en los méritos del caso para que este pudiera recibir su pensión.

Luego de diversas comunicaciones entre el recurrente y la Junta de Retiro, consta del expediente que el 6 de junio de 2024, el recurrente presentó una *Solicitud de Apelación* ante la Oficina de Asuntos Adjudicativos adscrita a la Junta de Retiro en la cual manifestó su inconformidad con la falta de diligencia por parte de la Junta de Retiro en atender su reclamo para recibir su pensión de retiro por años de servicio.[7]

El 3 de julio de 2024, la Junta de Retiro emitió una *Orden* para celebrar una *Conferencia con Antelación a Vista* el 22 de agosto de 2024.[8] En esa línea, le advirtió a las partes que podían presentar para la *Conferencia con Antelación a Vista* una moción informativa

---

[6] Íd., Anejo F, págs. 68-85.
[7] Íd., Anejo B, pág. 22.
[8] Íd.

individual. A su vez, señaló una vista administrativa para el 30 de septiembre de 2024.

El 22 de julio de 2024, la Oficina de Asuntos Adjudicativos de la Junta de Retiro radicó la *Contestación a Apelación y Moción de Desestimación* en la que alegó que no existe una determinación emitida por la Junta de Retiro acerca del pago por los servicios no cotizados, por lo que no existe una determinación que contenga una determinación adversa al apelante.[9] Además, la Oficina de Asuntos Adjudicativos de la Junta de Retiro aclaró que no está denegando el beneficio de retiro para el recurrente. A su vez, sostuvo que la controversia planteada fue previamente atendida por la Junta de Retiro y el Tribunal de Apelaciones por lo que la acción constituye cosa juzgada. Por ende, el caso debía desestimarse por falta de jurisdicción.

El 23 de julio de 2024, la Junta de Retiro emitió una *Orden* para que el recurrente presentara su argumento por el cual no debía desestimarse el caso por falta de jurisdicción.[10]

El señor Castro Márquez presentó la *Contestación moción de desestimación,* firmada el 24 de julio de 2024, en la que reclamó que se le estaba privando su derecho a la pensión por años de servicio mientras no pagara la deuda por los años de servicios no cotizados.[11]

Luego de varios trámites administrativos, el 22 de agosto de 2024, se celebró la *Conferencia con Antelación a Vista* en la que no compareció el recurrente, ni se excusó.[12]

Ese mismo día, la Junta de Retiro emitió una *Orden de Mostrar Causa a la parte Apelante,* en la que le requirió que debería mostrar justa causa por la cual no deba ser desestimado el caso ante la falta de interés.[13]

---

[9] Íd., págs. 22-25.
[10] Íd., pág. 25
[11] Íd. Anejo L.
[12] Íd., Anejo B, pág. 26.
[13] Íd.

El 23 de agosto de 2024, recibida el 27 de agosto de 2024, el recurrente radicó *Moción en cumplimiento orden del 23 de julio de 2024 argumentos para no desestimación* en la que indicó que hay varias incongruencias con relación al porcentaje de interés imputado por la Junta de Retiro a la cuantía correspondiente por los servicios no cotizados.[14] Además, el señor Castro Márquez, nuevamente arguyó que se le ha vulnerado su derecho a la pensión puesto que el personal de la Junta de Retiro le informó que debía pagar los servicios no cotizados para recibir la pensión de retiro por años de servicio.

El 27 de agosto de 2024, la Oficina de Asuntos Adjudicativos de la Junta de Retiro presentó *Moción Informativa para Status Conference.*[15]

Tras diversas mociones presentadas por el recurrente sosteniendo los planteamientos previamente esbozados, el señor Castro Márquez radicó el 5 de septiembre de 2024, *Moción de cumplimiento orden del 27 de agosto de 2024; Renuncia a vistas administrativas y no contratar servicios legales* en la que argumentó que existe controversia en torno al porcentaje imputado al monto que adeuda por las horas trabajadas y no acreditadas ante la Junta de Retiro.[16] Empero, este alegó que la cuantía que adeuda por los servicios no cotizados debió computarse en base al interés legal del seis por ciento (6%) según lo establecido estatutariamente. El recurrente indicó que conforme lo establecido en la *Sistema de Retiro para los Empleados del Gobierno de Puerto*, Ley Núm. 447 de 15 de mayo de 1951 (Ley Núm. 447-1951), según enmendada, 3 LPRA sec. 761, *et. seq*, este en realidad adeuda la suma de sesenta ocho mil cuatrocientos cincuenta y uno dólares y treinta y ocho centavos

---

[14] Íd., Anejo L.
[15] Íd., Anejo B, pág. 27.
[16] Íd., Anejo L.

($68,451.38), imputándole el interés legal del seis por ciento (6%), y por tanto, se le debe acreditar 6.5 años de servicios no cotizados.

El 12 de septiembre de 2024, el recurrente presentó la *Moción memorando de derecho* en la que mantuvo sus alegaciones en cuanto a que la Junta de Gobierno erró en cumplir con lo resuelto y ordenado por este Tribunal de Apelaciones en el caso ***Elvin F. Castro Márquez v. Administración de los Sistemas de Retiro de los empleados del Gobierno y la Judicatura***, supra. Además, indicó que la Junta de Retiro le ha limitado las alternativas de pago con relación a la cuantía equivalente a los servicios no cotizados para acogerse a su retiro por años de servicio. A su vez, resaltó que esta Curia resolvió que le asiste el beneficio de retiro, pero arguyó que la Junta de Retiro no ha computado a base de la totalidad del expediente el monto correspondiente al pago por los servicios no cotizados. En fin, el señor Castro Márquez alegó que la Junta de Retiro ha dilatado el procedimiento para que se acate a al mandato del Tribunal de Apelaciones.

El 17 de septiembre de 2024, la parte recurrida emitió una *Orden* en la que le notificó a las partes que el caso quedó sometido para ser adjudicado.[17]

El 24 de septiembre de 2024 y notificada el 8 de octubre de 2024, la Junta de Retiro emitió una *Resolución* en la que formuló cincuenta y tres (53) determinaciones de hechos y tracto procesal en las que relató el tracto procesal del caso. A su vez, las determinaciones de hecho esbozan las acciones que ha llevado a cabo la parte recurrida en aras de cumplir con el mandato de este tribunal en la *Sentencia* emitida por este tribunal en el caso, ***Elvin F. Castro Márquez v. Administración de los Sistemas de Retiro de los empleados del Gobierno y la Judicatura***, supra.

---

[17] Íd., Anejo B, pág. 35.

La parte recurrida resolvió que no consta del récord administrativo que el Director Ejecutivo de la Junta de Retiro haya emitido una *Resolución* en cuanto al reclamo incoado por el señor Castro Márquez. A su vez, la Junta de Retiro decretó que en múltiples ocasiones sostuvieron reuniones para explicarle al recurrente acerca del pago de la cuantía equivalente a los servicios no cotizados que debía realizar para gozar del retiro por años de servicio. Cónsono con lo anterior, la Junta de Retiro aclaró que le asiste el beneficio del retiro por años de servicio, una vez realice el mencionado pago, tal como lo resolvió este Tribunal de Apelaciones. Consecuentemente, la Junta de Retiro ordenó el archivo, con perjuicio, del caso al encontrarse sin jurisdicción para atender el asunto tras no existir un dictamen previo de la agencia acerca del reclamo del señor Castro Márquez.

El 16 de octubre de 2024, el recurrente envió una carta ante la Junta de Retiro solicitando *Reconsideración* de la *Resolución* emitida por la parte recurrente en la que solicitó la revisión de la cuantía computada en cuanto a los servicios no cotizados.[18]

Inconforme, el recurrente presentó el 6 de mayo de 2025 el recurso de *Mandamus* ante esta Curia en el que solicitó que ordenemos a la Junta de Retiro a que cumpla con su deber ministerial en concederle su retiro tras cumplir con los años de servicios compulsorios. Asimismo, adujo que la parte recurrida ha incumplido con el mandato ordenado por este Tribunal de Apelaciones en el caso, ***Elvin F. Castro Márquez v. Administración de los Sistemas de Retiro de los empleados del Gobierno y la Judicatura***, supra. En esa línea, ripostó que la parte recurrida ha dilatado los procedimientos y frustrado lo ordenado en la referida *Sentencia.* Ante ello, el señor Castro Márquez señaló que

---

[18] Íd., Anejo D.

la expedición del auto de *Mandamus* es el mecanismo idóneo para compeler a la parte recurrida a ejecutar lo ordenado en la referida *Sentencia.* Cónsono con lo anterior, el recurrente expresó que la Junta de Retiro ha lacerado su derecho propietario para recibir el beneficio de retiro. Por ende, el señor Castro Márquez nos solicitó que expidamos el auto de *Mandamus* y ordenemos a la Junta de Retiro a que compute el cálculo correcto de la pensión que recibiría, aplicándole el interés legal correspondiente del seis por ciento (6%).

**III.**

**A.**

De entrada, es menester pormenorizar que el auto de *mandamus* es un recurso altamente privilegiado y discrecional que se expide para ordenar a cualquier persona natural, corporación o a un tribunal de inferior jerarquía que cumpla o ejecute un acto que forma parte de sus deberes y atribuciones. Art. 649 del Código de Enjuiciamiento Civil, 32 LPRA, sec. 3421. Éste, "aunque es un remedio en ley, participa de la índole de los de equidad". ***Rodríguez v. Corte***, 53 DPR 575, 577 (1938). La Regla 54 de Procedimiento Civil, 32 LPRA Ap. V, R. 54, establece que:

> El auto de mandamus, tanto perentorio como alternativo, podrá obtenerse presentando una solicitud jurada al efecto. Cuando se solicite dicho remedio y el derecho a exigir la inmediata ejecución de un acto sea evidente y aparezca que no se podrá dar ninguna excusa para no ejecutarlo, el tribunal podrá ordenar perentoriamente la concesión del remedio; de otro modo, ordenará que se presente una contestación. Tan Reglas de Procedimiento Civil de Puerto Rico 86 pronto sea conveniente, el tribunal celebrará una vista, recibiendo prueba, si es necesario, y dictará su decisión prontamente. Se obtendrá el cumplimiento de las órdenes dictadas por el tribunal del mismo modo en que se exige el cumplimiento de cualquier otra orden.

El recurso de *mandamus* es un auto discrecional y altamente privilegiado mediante el cual se ordena a una persona o funcionario público, el cumplimiento de un acto que en dicho auto se exprese y que este dentro de sus facultades. ***Báez Galib v. Comisión Estatal de Elecciones***, 152 DPR 382, 392 (2000). Para expedir el auto de

*mandamus*" se ha reconocido que debe existir un requerimiento previo por parte del peticionario hacia el demandado para que éste cumpla con el deber exigido, salvo algunas excepciones. ***Noriega v. Hernández Colón***, 135 D.P.R. 406, 448 (1994). Algunas de estas excepciones son:

> 1) cuando aparece que el requerimiento hubiese sido inútil e infructuoso, pues hubiese sido denegado si se hubiera hecho;
> o 2) cuando el deber que se pretende exigir es uno de carácter público, a diferencia de uno de naturaleza particular, que afecta solamente el derecho del peticionario. (Escolios omitidos). D. Rivé Rivera, _Recursos Extraordinarios_, 2da ed., San Juan, Programa de Educación Legal Continuada de la Universidad Interamericana de Puerto Rico, Facultad de Derecho, 1996, pág. 125. Véase, ***Noriega v. Hernández Colón***, supra. pág. 448-449.

Al momento de decidir si expedir el auto de *mandamus*, cobra importancia el posible impacto que pueda tener su expedición sobre los intereses públicos. ***Báez Galib v. Comisión Estatal de Elecciones***, supra. pág. 392. El recurso de *mandamus* permite exigir a un funcionario que no cumpla con la ley o actuación gubernamental cuando su cumplimiento quebranta un deber ministerial de superior jerarquía, como lo sería un deber ministerial impuesto por la Constitución del Estado Libre Asociado. Íd. La procedencia del *mandamus* no está proscrita por el hecho de que se requiera una interpretación del deber ministerial invocado. ***Báez Galib v. Comisión Estatal de Elecciones***, supra. pág. 394. De esta forma, si la ley prescribe y define el deber, será cumplido con tal precisión y certeza que nada deja al ejercicio de la discreción o juicio, el acto es uno ministerial. ***Álvarez de Choudens v. Tribunal Superior***, 103 DPR 235, 242 (1974). No se trata de una mera directriz o de una disposición que requiere hacer algo, sin más. Debe tratarse de un mandato específico que la parte demandada tiene que cumplir y que no le permite decidir si cumple o no el acto solicitado. *A contrario sensu*, cuando la ejecución del acto o la acción que se describe depende de la discreción o juicio del funcionario, tal

deber es considerado como no ministerial. Íd. Por consiguiente, al no ser ministeriales, los deberes discrecionales quedan fuera del ámbito del recurso de *mandamus*. ***Partido Popular v. Junta de Elecciones***, 62 DPR 745, 749 (1944). En aquellos casos en los que el deber no surja expresamente de la ley, los tribunales tendrán la función de interpretar el estatuto y emitir su determinación final, conforme a los principios de hermenéutica legal. ***Hernández Agosto v. Romero Barceló***, 112 DPR 407, 418 (1982).

El Tribunal de Apelaciones podrá conocer en primera instancia una petición de *mandamus.* Art. 4.006 (d) de la Ley Núm. 201-2003, conocida como la "Ley de la Judicatura del Estado Libre Asociado de Puerto Rico de 2003", 4 LPRA sec. 24y; Regla 55 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 55. Dicha petición se regirá por la reglamentación procesal civil, por las leyes especiales pertinentes y por las reglas aplicables del Reglamento del Tribunal de Apelaciones. Regla 54 del Reglamento del Tribunal de Apelaciones, *supra*, R. 54. Como parte de los requisitos, la Regla 54 de las de Procedimiento Civil, *32 LPRA Ap. V* R. 54, exige que la petición de *mandamus* sea **jurada**.

Además, nuestro ordenamiento requiere que la parte demandada sea emplazada, a tenor con las disposiciones de las Reglas de Procedimiento Civil y de las leyes pertinentes. Regla 55 (J) del Reglamento del Tribunal de Apelaciones, *supra*, R. 55 (J). Sin embargo, cuando se trate de una petición de *mandamus* dirigida a un juez o jueza bastará con que el peticionario le notifique con copia del escrito de *mandamus* en conformidad a lo dispuesto en la Regla 13 (B) de nuestro Reglamento, *supra*, R. 13 (B). Íd. A su vez, deberá notificarle a las demás partes del pleito que originó la petición de *mandamus* y al tribunal en el que se encuentre pendiente. Íd.

**IV.**

Según hemos pormenorizado, el auto de *mandamus* es un recurso altamente privilegiado y discrecional. Nuestro ordenamiento jurídico exige que la parte promovente cumpla con ciertos requisitos procesales para que el tribunal pueda considerarlo. Conforme a estos requisitos, la petición de *mandamus* tiene que ser jurada. En el caso ante nos, el recurrente presentó la petición de *mandamus* debidamente juramentada.

Por otro lado, debe haber un requerimiento previo por parte del peticionario dirigido hacia la otra parte para que este cumpla con el deber ministerial exigido. Sin embargo, consta en el expediente del caso de marras que el reclamo del señor Castro Márquez fue previamente atendido por la Junta de Retiro y resuelto en la citada *Sentencia* por un panel hermano.[19] En esa línea, el señor Castro Márquez debe acatarse a lo resuelto en la citada *Sentencia* y cumplir con el pago computado por la Junta de Retiro para recibir la pensión de retiro por años de servicio. Es menester señalar que, no nos encontramos ante un caso en el que las cuestiones planteadas versen sobre asuntos en los que excepcionalmente se deba eximir al recurrente de este requisito. Adviértase que, tampoco tenemos ante nuestra consideración una *Resolución* de la Junta de Retiro que resuelva algún asunto sustantivo referente al recurrente.

El incumplimiento del peticionario con los requisitos constitutivos antes esbozados nos impide atender la presente petición de *mandamus* y, por consiguiente, procede su desestimación. Esto es así pues no tenemos jurisdicción para evaluar en primera instancia lo solicitado en la misma ni, como cuestión de derecho, no hay una situación fáctica, en esta etapa de

---

[19] Véase, ***Elvin F. Castro Márquez v. Administración de los Sistemas de Retiro de los empleados del Gobierno y la Judicatura***, supra.

los procedimientos, que nos permitiese expedir el auto de *mandamus*.

**V.**

Por los fundamentos pormenorizados, se desestima la petición de expedición del auto de *mandamus*, por no cumplir con los requisitos estatutarios para su expedición.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones